[No. 22098.  *En Banc*.  February 24, 1931.]

GREAT NORTHERN RAILWAY COMPANY *et al., Appellants,*
v. THE DEPARTMENT OF PUBLIC WORKS *et al.,*
*Respondents.*[1]

[1]Reported in 296 Pac. 142.

*Thomas Balmer, Edwin C. Matthias,* and *A. J. Clynch,* for appellants.

*The Attorney General* and *John C. Hurspool, Assistant,* for respondent Department of Public Works.

*William C. McCulloch* and *Ralph C. Hoeber,* for respondent Northwestern Portland Cement Co.

FULLERTON, J.—The Northwestern Portland Cement Company is a corporation organized under the laws of this state, and is engaged in the business of manufacturing Portland cement. Its manufacturing plant is located at Grotto, a place some forty-seven miles easterly of the city of Everett; both places being within the state of Washington, and both being tributary to the main line of the Great Northern Railway Company. In its operations, the cement company uses large quantities of fuel oil, which is shipped in carload lots from Everett to Grotto, over the railway company's railway line. The tariff rate fixed by the railway company for the shipment of fuel oil, in carload lots, between the named places, is fourteen cents per one hundred pounds, and this sum it exacted from the cement company for the fuel oil shipped and used by it.

On October 1, 1928, the cement company filed a complaint with the department of public works of the state of Washington against the railway company, complaining that the rate exacted was excessive, unjust and unreasonable, and prayed that the railway company be required to answer the complaint, that a hearing be had thereon, and that the department fix a rate that would be fair, just, and reasonable. The railway company filed an answer to the complaint, amounting, in substance, to a general denial of the traversible allegations of the complaint. The department thereupon directed a hearing to be had on the issues as framed, before C. R. Lonergan, who is described in the record

by the titles of "Chief of Traffic Division," and "Rate and Traffic Expert" of the department. This officer heard the evidence offered, caused it to be taken down and transcribed, and reported it to the department, together with his findings and conclusions thereon. The department seems to have adopted the findings and conclusions as its own findings and conclusions, and, based thereon, entered an order reading as follows:

"WHEREFORE, it appearing that a full investigation of the matters and things involved has been had and that the department of public works of the state of Washington has made and filed a report of its findings of fact and conclusions thereon, which said report is hereby referred to and made a part hereof.

"IT IS ORDERED that the Great Northern Railway Company within fifteen days from the date of service of this order file a tariff or supplement to a tariff on five days notice naming a rate of 9 cents per 100 pounds on fuel oil in tank cars from Everett, Washington, to Grotto, Washington, minimum weight to be as prescribed for fuel oil in North Pacific Coast Freight Bureau Tariff No. 14-G, W. D. P. W. No. 242."

The railroad company thereupon sued out a writ of review to the superior court of Thurston county, and that court, after a hearing, affirmed the order of the department. The appeal before us is from the judgment and order of the superior court.

Before passing to the questions in controversy on the appeal, we feel impelled to call attention to the indefiniteness and uncertainty of the findings of fact made by the department. The statute (Rem. Comp. Stat., § 10423) requires the department, at the conclusion of the hearing, to "make and render findings concerning the subject-matter and facts inquired into." This contemplates a statement of the facts found in direct and certain language, sufficiently clear as to leave no misunderstanding as to their meaning and

purport. The findings in this instance are not thus direct and certain. Many of them are preceded by such phrases as "complainant alleges," "complainant's witnesses allege," "complainant also points out," "it was stated," "respondent submits," "respondent by its witnesses and in its brief argues," "testimony submitted by complainant indicates;" and the like, leaving it uncertain whether the department intended to affirm or disaffirm the matters contained in the recitals following the phrases, or intended the matters merely as argument in support of the conclusions reached. It is not objectionable, of course, that the department state the contentions of the parties or arguments used by them which it conceives support, or militate against, the facts as found by it, but, if uncertainty is to be avoided, these should be separately stated, and not confused one with the other in the findings.

On the merits of the controversy, the question for review is whether the rate fixed by the department for transporting the commodity mentioned between the places named, is, to paraphrase the language of the statute, just and reasonable. In determining the question, the courts are empowered to inquire, first, whether the facts as found by the department are sufficient, in themselves, to justify its order, and, second, if it finds that they are thus sufficient, to inquire whether there is any substantial evidence on which the findings can be based.

In this instance, it appears to us that the department made findings on many immaterial matters, having no substantial bearing on the question before it. To illustrate, it found that the officers of the complainant company, prior to the location of its manufacturing plant at Grotto, had a conference with the railway officials, in which conference the officials assured the

complainant's officers "that they would be given fair and reasonable rates on all inbound and outbound traffic;" it found that, if the present rate was continued, the complainant would be compelled to abandon the use of oil as fuel, and resort to coal, to its great and irreparable loss, if not to an abandonment of its plant altogether; it found that, after it had been announced publicly that the complainant's plant had been definitely located, the railway company cancelled certain of its rates on fuel oil on other parts of its lines, which rates were lower for a like distance of haul than the rate it fixed between Everett and Grotto; and found many other matters of like concern.

Obviously, these are not matters entitled to weight, when fixing a tariff for a common carrier, which must treat all members of the public alike. It is to treat the matter as though it were a private controversy between the railroad company and the complainant, in which the general public has no interest. But the rate is of wider concern. It affects every person who may desire to ship over the carrier's lines, and affects the power and capacity of the carrier to perform the duty it owes to the public generally. In other words, the question before the department was not, solely, how the complainant would be affected by the rates fixed, but was, rather, is the rate fixed just and reasonable to the carrier and to the public.

It may be the rule that, where a carrier has established a particular rate for the express purpose of inducing an industry to be established, and money is invested in reliance upon the rate, which may be lost if the rate is increased, the fact may be considered by the rate-making power in passing upon the reasonableness of the increased rate. But this question is not here present. There was no agreement upon a rate for the

shipment of fuel oil between the complainant and the railway company. The promise was to give them "fair and reasonable rates on all inbound and outbound traffic;" and whether they did so or not, must be determined by the general rules governing the powers of a rate-making body, when determining the reasonableness of a rate.

Nor is it intended to be said that the rate-making body may not consider the effect that a change in an established rate will have upon the community at large. This is a matter it may well consider, and, in some instances, may be a governing circumstance (*Puget Sound Elec. R. v. Railroad Commission,* 65 Wash. 75, 117 Pac. 739, Ann. Cas. 1913B 763), but the effect it will have on an individual shipper is of but little consequence, if the rate is reasonable as it relates to the general public.

However, the department did find that "the rate assailed is, and for the future will be, unreasonable to the extent that it exceeds 9 cents," and this, possibly, is a sufficient finding to support its order, if there is substantial evidence in its support. But we find no such evidence in the record. The evidence introduced, in addition to the evidence before mentioned, were tariff rates for the same character of commodity between other places on the railway company's lines, lower in amount than the rate here charged for a somewhat longer distance of haul, and the rates charged for hauling a like commodity in the state of California, lower than the rate here charged for distances of haul comparatively the same as the distance of haul in this instance. But the first of these were paper rates; that is to say, rates under which no traffic was moving or ever had moved, other than in isolated instances, wide apart with respect to time, and few in number. All of the authorities agree, and it has

been many times determined by the courts, that such a rate furnishes no substantial basis for measuring an existing rate under which traffic does move. The reason for the rule we shall not here stop to state. It is enough to say that it is well founded.

The second branch of the evidence is more to the point, but, unfortunately, the evidence on the part of the complainant stopped with the introduction of the tables showing the rates. It was not shown, nor attempted to be shown, that the rates were based on hauls made under like or similar conditions to the one here in question. Indeed, the witness authenticating the tables showing the rates frankly stated that he knew nothing of the surrounding conditions which induced the rates, and, to the extent that the conditions were shown at all, they were shown to be dissimilar to the conditions here prevailing; that they were not based entirely on the reasonableness of the charge, but were affected by other conditions, such as competition by trucks, competition by oil pipe lines, competition by water transportation, and the like.

It was, of course, entirely within the province of the department to make comparisons under proper circumstances between a charge made by one carrier and that made by another, when determining the reasonableness of a rate, but, as we held in *Public Service Comm. v. State ex rel. Great N. R. Co.*, 118 Wash. 629, 204 Pac. 791, 207 Pac. 688, 25 A. L. R. 186, the simple comparison, in itself, does not prove much; before the proofs can be regarded as substantial, the circumstances inducing the rate must be taken into consideration; it must be shown that the conditions inducing the rate are like or similar.

It would seem, too, that the department went far afield in their endeavor to find a rate with which to support their finding. There was an authenticated

table introduced by the railway company, showing the rates charged by all of the great railroads penetrating the state for transporting this particular commodity for distances closely approximating the distance of the haul here in question, in none of which, with a single exception, was the rate charged as low as it is in this instance. To these rates, the department does not even make mention, possibly because, as we are afraid, they lost sight of the real nature of the inquiry before it.

The learned counsel for the complainant contends that the evidence introduced at the hearing supports the order of the department, and that the court may, if it so concludes, disregard the findings made by the department, and affirm its order, merely because it is so supported. But this contention mistakes the functions of the court. The power to fix the rates of a common carrier is a legislative power, and the court's power is limited to the inquiry whether the findings and conclusions of the body to which the power is delegated, are justified by the record it makes. The rule can be no better stated than it is stated in a recent decision of the supreme court of the United States (*Florida v. United States*, 51 Sup. Ct. 119, not yet officially reported), wherein it is said:

"The question is not merely one of the absence of elaboration or of a suitably complete statement of the grounds of the commission's determination, to the importance of which this court has recently adverted (*The Beaumont, Sour Lake & Western Railway Company v. United States*, decided November 24, 1930, 282 U. S. —), but of the lack of the basic or essential findings required to support the commission's order. In the absence of such findings, we are not called upon to examine the evidence in order to resolve opposing contentions as to what it shows or to spell out and state such conclusions of fact as it may permit. The Commission is the fact-finding body and the Court examines the evidence not to make findings for the Commission

but to ascertain whether its findings are properly supported.''

█ It remains to inquire what disposition shall be made of the cause. The trial court affirmed the order of the department, but, as we reverse its judgment, another disposition of the cause is required. Ordinarily, our direction would be to set aside the order of the department, but, as we view the record, neither party has had a fair trial upon the issues actually presented; and we think the cause should be remanded to the department with directions to admit such further testimony as either of the parties desire to submit, and to make findings in consonance with the real issue involved, disregarding the private and personal interests of either party to the controversy. Such was our order in the case from this court last cited.

The judgment of the superior court is reversed, with directions to remand the cause to the department for further consideration.

TOLMAN, C. J., PARKER, MAIN, BEALS, MITCHELL, HOLCOMB, and MILLARD, JJ., concur.