[No. 31826-1-II.   Division Two.   August 3, 2005.]

THE ATTORNEY GENERAL'S OFFICE, PUBLIC COUNSEL SECTION,
*Appellant*, v. THE UTILITIES AND TRANSPORTATION
COMMISSION ET AL., *Respondents*, INDUSTRIAL
CUSTOMERS OF NORTHWEST UTILITIES,
*Appellant*.

820

*Robert M. McKenna, Attorney General,* and *Robert W. Cromwell, Assistant;* and *Melinda J. Davison,* for appellants.

*Robert M. McKenna, Attorney General,* and *Robert D. Cedarbaum, Assistant,* for respondents.

¶1 HOUGHTON, J. — On August 9, 2000, the Washington Utilities and Transportation Commission (Commission) approved a settlement by PacifiCorp, the Industrial Customers of Northwest Utilities (ICNU), and the Public Counsel Section of the Washington State Attorney General's Office (Public Counsel). Incorporating the settlement agreement, the Commission approved a defined schedule for PacifiCorp's power rate increases. The schedule covered a

five-year term, ending in 2005. But in 2002, the Commission allowed PacifiCorp to file a general rate increase case.

¶2 Public Counsel filed a petition for judicial review. ICNU and PacifiCorp intervened. The superior court affirmed the Commission's action and dismissed the petition.

¶3 ICNU and Public Counsel appeal, arguing that the Commission (1) lacked authority to amend the parties' agreement, (2) acted arbitrarily and capriciously, (3) failed to support its findings with substantial evidence, and (4) denied due process. We affirm.

## FACTS

¶4 The Commission serves as an administrative agency with broad authority to regulate the rates, services, and practices of utility companies providing services in Washington. PacifiCorp is a public service electric company subject to the Commission's jurisdiction as to its rates and practices relating to the electric service it provides to Washington retail customers. ICNU is an incorporated, nonprofit trade association of large Pacific Northwest industrial electric customers.

¶5 On November 24, 1999, acting under WAC 480-07--505(1),[1] PacifiCorp filed a general rate increase case with the Commission. It sought a $25.8 million annual increase in its base rates charged to Washington electric customers. On June 20, 2000, before full adjudication of PacifiCorp's rate increase proposal, PacifiCorp, ICNU, and Public Counsel reached a settlement.

¶6 The settlement recommended a five-year plan, during which PacifiCorp's rates would increase by three percent in January 2001 and 2002 and by one percent in January 2003. The rates would not increase in 2004 or 2005, absent a need for emergency relief. On August 9, 2000, the Commission approved the settlement and issued a rate plan

---

[1] A general use proceeding filing is a filing by a regulated company for an increase in rates, where the amount requested would increase the company's gross annual revenue by three percent or more. WAC 480-07-505(1).

order (Rate Plan Order) incorporating the agreement. Resp't's (Commission) Br., attach. A.

¶7 On April 5, 2002, PacifiCorp filed an accounting petition with the Commission. It sought an order authorizing deferral of excess net power costs it incurred in serving Washington customers. PacifiCorp wanted to track its asserted excess net power costs of $12.7 million from June 1, 2002 through May 31, 2003 or " 'some form of limited rate relief to address extraordinary power costs.' " Clerk's Papers at 7.

¶8 In response, Public Counsel and ICNU filed a joint motion to reopen or rehear, arguing that the accounting petition violated the Rate Plan Order. On August 21, 2002, the Commission denied the motion.

¶9 On September 27, 2002, the Commission issued an order limiting the scope of the proceedings. Only one question would be addressed:

> [W]hether PacifiCorp has carried its burden to establish that, due to factors beyond [its] control, it has incurred and is incurring during the relevant period (*i.e.*, after May 31, 2002) such extraordinary levels of power costs that it should be permitted to track those costs in a separate deferral account for possible recovery through rates during some future period.

Administrative Record (AR) (Pleadings) at 219.

¶10 The Commission also noted that it expected PacifiCorp to file a rate recovery plan. In response, on October 18, 2002, PacifiCorp filed a cost recovery plan, and the Commission expanded the scope of the proceeding to include consideration of issues implicated by the proposed recovery mechanism.

¶11 Following a March 2003 evidentiary hearing, the Commission issued an order amending its prior order (Amending Order). The Amending Order denied PacifiCorp's accounting petition and request for emergency rate relief. But the Commission allowed PacifiCorp the option to file a general rate increase case by the end of 2003.

¶12 On August 14, 2003, Public Counsel filed a petition in the superior court seeking judicial review of the Commission's Amending Order. The superior court affirmed the Commission's action and denied the petition for judicial review.

¶13 ICNU and Public Counsel appeal, asking us to review and vacate the Commission's Amending Order.

## ANALYSIS

### Standard of Review

██ ██ ¶14 When reviewing agency action, we apply the standards of the Washington Administrative Procedure Act (APA), chapter 34.05 RCW, directly to the record before the agency. *Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n*, 149 Wn.2d 17, 24, 65 P.3d 319 (2003). In reviewing matters within agency discretion, we determine whether the agency legally exercised its discretion. RCW 34.05-.574(1). We give substantial deference to a regulatory agency's judgment about how best to serve the public interest. *Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n*, 110 Wn. App. 498, 516, 41 P.3d 1212 (2002), *aff'd*, 149 Wn.2d 17, 65 P.3d 319 (2003).

██ ¶15 We overturn an arbitrary or capricious agency order. RCW 34.05.570(3)(i). An agency's action is arbitrary and capricious only if it "is willful and unreasoning and taken without regard to the attending facts or circumstances." *Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 383, 932 P.2d 139 (1997). " 'Where there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous.' " *Rios v. Dep't of Labor & Indus.*, 145 Wn.2d 483, 501, 39 P.3d 961 (2002) (quoting *Hillis*, 131 Wn.2d at 383). Neither the existence of contradictory evidence nor the possibility of deriving conflicting conclusions from the evidence renders an agency decision arbitrary and capricious. *Rios*, 145 Wn.2d at 504.

■ ¶16 And we do not set aside a discretionary agency decision absent a clear showing of abuse. *ARCO Prods. Co. v. Utils. & Transp. Comm'n*, 125 Wn.2d 805, 812, 888 P.2d 728 (1995). We grant relief only if the agency action substantially prejudiced a party seeking judicial relief. RCW 34.05.570(1)(d).

■ ¶17 Finally, we review questions of law de novo. *Case v. Dundom*, 115 Wn. App. 199, 201, 58 P.3d 919 (2002).

## Commission Authority

¶18 ICNU and Public Counsel first contend that the Rate Plan Order approving and adopting the settlement among all parties contractually bound the Commission. We disagree.[2]

■ ■ ¶19 "The Legislature created the Commission to secure safe, adequate, and sufficient utility services for the public at just, fair, reasonable and sufficient rates." *US W. Communications, Inc. v. Utils. & Transp. Comm'n*, 134 Wn.2d 74, 121, 949 P.2d 1337 (1997). It retains broad authority to regulate the rates, services, and practices of companies providing electricity service in the state of Washington:

The utilities and transportation commission shall:

(1) Exercise all the powers and perform all the duties prescribed therefor by this title and by Title 81 RCW, or by any other law.

. . . .

(3) Regulate in the public interest . . . the rates, services, facilities, and practices of all persons engaging within this state in the business of supplying any utility service or commodity to the public for compensation, and related activities; including, but not limited to, electrical companies, gas compa-

---

[2] ICNU and Public Counsel urge us to review whether the Commission has authority to amend the parties' settlement. They argue that this presents an issue of first impression in Washington. We disagree that this case presents an issue as framed by ICNU and Public Counsel. We must decide whether the Commission retains authority to amend its prior order.

nies, irrigation companies, telecommunications companies, and water companies.

(4) Make such rules and regulations as may be necessary to carry out its other powers and duties.

RCW 80.01.040. The Commission " 'must in each rate case endeavor to not only assure fair prices and service to customers, but also to assure that regulated utilities earn enough to remain in business—each of which functions is as important in the eyes of the law as the other.' " *US W. Communications*, 134 Wn.2d at 121 (emphasis omitted) (quoting *People's Organization for Wash. Energy Resources v. Utils. & Transp. Comm'n*, 104 Wn.2d 798, 808, 711 P.2d 319 (1985)). In setting rates, the Commission must balance investor and consumer interests. *US W. Communications*, 134 Wn.2d at 121.

¶20 The Commission has wide discretion to modify its prior orders:

> The commission may at any time, upon notice to the public service company affected, and after opportunity to be heard as provided in the case of complaints rescind, alter or amend any order or rule made, issued or promulgated by it, and any order or rule rescinding, altering or amending any prior order or rule shall, when served upon the public service company affected, have the same effect as herein provided for original orders and rules.

RCW 80.04.210. ICNU and Public Counsel bear the burden of demonstrating the invalidity of the Commission's action in amending the Rate Plan Order. RCW 34.05.570(1)(a).

¶21 Although the parties settled their differing views on how the utility rates should be adjusted over the rate plan period, the Commission issued its own Rate Plan Order approving and adopting that settlement. Thus, by issuing its Amending Order abrogating the terms of the settlement, the Commission amended its own prior order. RCW 80-.04.210 authorizes such an amendment.

Factual Findings and Substantial Evidence

¶22 ICNU and Public Counsel next contend that the Commission acted arbitrarily and capriciously when it failed to provide specific findings of fact supporting its decision to abrogate the terms of the Rate Plan Order. They also assert that substantial evidence does not support the findings actually entered.

¶23 The power to fix the rates of a utility is a legislative power, thus limiting our inquiry to whether the record justifies the findings and conclusions of the body to which the legislature delegates power. *State ex rel. Bohon v. Dep't of Pub. Serv.*, 6 Wn.2d 676, 687, 108 P.2d 663 (1940).

¶24 "Meaningful appellate review requires entry of adequate and detailed findings of fact and conclusions of law." *Citizens for Responsible and Organized Planning (CROP) v. Chelan County*, 105 Wn. App. 753, 755, 21 P.3d 304 (2001). We review factual questions under the substantial evidence standard. And we review de novo questions of law and the application of the law to the facts. *Terry v. Employment Sec. Dep't*, 82 Wn. App. 745, 748-49, 919 P.2d 111 (1996).

¶25 We grant relief from an agency order in an adjudicative proceeding only where substantial evidence does not support it. RCW 34.05.570(3)(e). Substantial evidence is that sufficient to persuade a fair-minded person of the truth of the declared premises. *Green Thumb, Inc. v. Tiegs*, 45 Wn. App. 672, 676, 726 P.2d 1024 (1986). The findings and conclusions do not have to contain an extensive analysis. *US W. Communications, Inc. v. Util. & Transp. Comm'n*, 86 Wn. App. 719, 731, 937 P.2d 1326 (1997). But they need to be sufficient to support the Commission's order. *Great N. Ry. v. Dep't of Pub. Works*, 161 Wash. 29, 36, 296 P. 142 (1931).

¶26 Here, we ask whether the Commission's factual findings comply with the relevant provisions of the APA, namely RCW 34.05.461(3), which provides in part:

Initial and final orders shall include a statement of findings and conclusions, and the reasons and basis therefor, on all the material issues of fact, law, or discretion presented on the record, including the remedy or sanction and, if applicable, the action taken on a petition for a stay of effectiveness. Any findings based substantially on credibility of evidence or demeanor of witnesses shall be so identified. Findings set forth in language that is essentially a repetition or paraphrase of the relevant provision of law shall be accompanied by a concise and explicit statement of the underlying evidence of record to support the findings. The order shall also include a statement of the available procedures and time limits for seeking reconsideration or other administrative relief.

¶27 The Commission found that PacifiCorp's rates may no longer be just, fair, reasonable, and sufficient due to the lingering effects of the 2000-2001 western power crisis. The Commission also found that a comprehensive understanding of PacifiCorp's financial condition in a general rate case was essential because such analysis had not taken place for 17 years. Taken together, these findings clearly and sufficiently articulate the basis for the Commission's decision to amend the Rate Plan Order.

¶28 The Commission determined that "[t]here is evidence that PacifiCorp might not achieve the results it should over the next several years, even relative to the fairly modest returns it agreed to accept under the Rate Plan." AR (Pleadings) at 555. In reaching that conclusion, the Commission considered the following evidence:

¶29 Mark Widmer, who is responsible for the coordination and preparation of net power cost analysis at PacifiCorp, estimated that PacifiCorp incurred $16.5 million in excess net power costs. The reasons for the higher power costs levels included the expiration of wholesale sales contracts, increased retail loads, contractual cost increases for wheeling expenses, and others.

¶30 Next, Jeffrey Larsen, PacifiCorp vice president for regulation compliance, testified:

Although [PacifiCorp] more recently has not experienced the extremely high power prices that occurred through late 2000

and early 2001, [its] power costs during the Deferral Period continue to reflect the impacts of the 2000-2001 western energy crisis.

AR (Exhibits) at 574. Larsen also stated that, during the two-year period from June 2000 to June 2002, PacifiCorp experienced power costs for serving Washington customers that were about $98 million higher than the level reflected in rates under the rate plan.

¶31 Finally, Steven McDougal, a PacifiCorp regulatory analysis manager, summarized:

My testimony presents [PacifiCorp's] most recent actual Washington financial results for the period ended March 31, 2002 and forecasts of Washington revenue requirement for the remainder of the Rate Plan Period. This information supports Mr. Larsen's testimony that the results of operations in the state of Washington over the Rate Plan Period are deteriorating.

AR (Exhibits) at 998.

¶32 Based on this evidence, the Commission found:

We . . . conclude that the record, considered as a whole, demonstrates that the Rate Plan has been so overtaken by events that it no longer is in the public interest for the Company's rates to remain unexamined through the Rate Plan Period . . . . Such an examination is long overdue and seems absolutely imperative in the wake of the recent power market crisis. It would be contrary to the public interest for us to bar this important matter from full consideration at an early date.

AR (Pleadings) at 548-49. Moreover, the Commission considered the interests of all parties involved:

We are mindful in this connection that the Rate Plan was designed and implemented as a balance of interests to achieve several objectives. From a ratepayer perspective, the goals were to avoid rate shock and to establish relatively stable rates over a reasonable period. From a Company perspective, the goals were to allow for recovery of sufficient revenue to maintain PacifiCorp's financial strength through a transition period

when rate setting was acknowledged by all parties to be a difficult undertaking.

AR (Pleadings) at 556.

¶33 Thus, the Commission balanced the interests of all parties with its obligation to regulate the utility rates in the public interest. Although it acknowledged that the Rate Plan Order barred PacifiCorp's early filing of the general rate case, it concluded that the unforeseeable power market crisis necessitated amending its prior order and allowing such early filing. The evidence in the record, viewed as a whole, substantially supports these findings.

¶34 ICNU and Public Counsel argue that the findings were contradictory because the Commission relied on the same evidence to allow PacifiCorp to file a general rate case, while at the same time rejecting its request for deferred accounting. We disagree.

¶35 The Commission balanced the interests of utility and the ratepayers: it refused PacifiCorp's emergency rate relief so as to avoid shocking the ratepayers, while allowing PacifiCorp to file its general rate case prior to the expiration of the rate plan period. The findings do not contradict each other.[3]

¶36 Overall, no evidence in the record suggests that the Commission's findings in its Amending Order were in error or were reached by means not authorized by RCW 80-.01.040. Thus, the Commission did not issue an arbitrary or capricious decision.

## Due Process

¶37 Finally, ICNU and Public Counsel argue that the Commission violated their due process rights. They assert that the Commission's actions deprived them of notice and

---

[3] ICNU and Public Counsel also argue that the Commission improperly found that the ratepayers received all their bargained for benefits under the Rate Plan Order. But the Commission did not assert that the ratepayers received all bargained for benefits under the Rate Plan Order. On the contrary, the Commission acknowledged that, as a result of its Amending Order, the rates may increase before the rate plan period expires. Thus, the Commission acted with full knowledge and consideration of the order's consequences as to all parties involved.

an opportunity to be heard when it issued the Amending Order.

¶38 The fourteenth amendment to the United States Constitution provides that no state shall deprive any person of life, liberty, or property, without due process of law. The Washington Constitution contains an almost identical clause. WASH. CONST. art. I, §3 ("No person shall be deprived of life, liberty, or property, without due process of law."). At a minimum, "procedural due process requires notice and an opportunity to be heard." *Silver Firs Town Homes, Inc. v. Silver Lake Water Dist.*, 103 Wn. App. 411, 425, 12 P.3d 1022 (2000), *review denied*, 143 Wn.2d 1013 (2001).

¶39 Generally, in reviewing the degree of process afforded in a particular case, we balance the following interests: " '(1) the private interest to be protected; (2) the risk of erroneous deprivation of that interest by the government's procedures; and (3) the government's interest in maintaining the procedures.' " *Silver Firs*, 103 Wn. App. at 425 (quoting *Rivett v. City of Tacoma*, 123 Wn.2d 573, 583, 870 P.2d 299 (1994)). "For due process protections to be implicated, there must be an individual interest asserted that is encompassed within the protection of life, liberty, or property." *Silver Firs*, 103 Wn. App. at 425-26.

¶40 To determine whether a procedure violates due process, we engage in a two-step analysis. *Wash. Indep. Tel. Ass'n v. Wash. Util. & Transp. Comm'n*, 110 Wn. App. 498, 508, 41 P.3d 1212 (2002), *aff'd*, 149 Wn.2d 17, 65 P.3d 319 (2003). First, we must determine whether a liberty or property interest exists entitling a party to due process protections. *Wash. Indep. Tel. Ass'n*, 110 Wn. App. at 508. Second, if such a constitutionally protected interest exists, we employ a balancing test to determine the degree of process due. *Wash. Indep. Tel. Ass'n*, 110 Wn. App. at 508.

¶41 The function of rate making is legislative in character. It may be directly exercised by the legislature itself or, as in the usual case, by administrative bodies endowed by the legislature with that authority. *People's*

*Organization for Wash. Energy Resources v. Wash. Util. &
Transp. Comm'n,* 104 Wn.2d 798, 807, 711 P.2d 319 (1985).

¶42 As to the procedural requirements applicable to the
legislative acts, our Supreme Court noted:

> Generally, we have not imposed procedural requirements upon
> legislative decisions. In reviewing ratemaking [sic] decisions of
> legislative bodies, we have looked only to whether the rates
> were fair (i.e., reasonable, nondiscriminatory, not arbitrary or
> capricious).
>
> One of the reasons for such judicial deference is the public
> accountability of elected officials.

*Earle M. Jorgensen Co. v. City of Seattle,* 99 Wn.2d 861,
867-68, 665 P.2d 1328 (1983) (citations omitted). Thus,
because the Commission's rate making is a legislative act,
ICNU and Public Counsel's only due process right is in
nonarbitrary rates. And because the Commission did not
set any rates in its Amending Order, we cannot say that the
Commission violated ICNU and Public Counsel's rights to
nonarbitrary rates.

¶43 Moreover, the parties' comprehensive settle-
ment was a joint recommendation to the Commission. It
became the Commission's order when the Commission
approved it and issued its Rate Plan Order. As noted,
RCW 80.04.210 authorizes the Commission to amend its
prior order.

¶44 The parties do not dispute that they received notice
of PacifiCorp's request for a deferred cost account. After
hearing from the parties, the Commission limited the scope
of the proceeding to PacifiCorp's request for a deferred cost
account.

¶45 ICNU and Public Counsel contend, however, that
they were not notified of the Commission's intention to
issue the Amending Order that allowed PacifiCorp to file a
general rate case before the rate plan period expiration.

¶46 But from the outset, ICNU and Public Counsel
argued that PacifiCorp's accounting petition could be con-
sidered only in direct association with the Rate Plan Order.

In its initial order limiting the scope of review, the Commission stated: "[W]e expect that the issues [ICNU and Public Counsel] raised by their arguments . . . will be subjects properly before us in the context of PacifiCorp's filing for cost recovery." AR (Pleadings) at 223 (footnote omitted).

¶47 Based on that order, PacifiCorp proposed a rate recovery mechanism. As a result, the Commission expanded the scope of the proceedings to include consideration of PacifiCorp's rate recovery proposal. Thus, the Commission granted ICNU and Public Counsel the opportunity to argue that PacifiCorp's accounting petition violated the Rate Plan Order. Therefore, nothing indicates that ICNU and Public Counsel lacked full awareness of the issues or were in any way deprived of a full opportunity to explore the issues of fact or be heard on the issues of law. Their due process arguments fail.

¶48 Affirmed.

MORGAN, A.C.J., and ARMSTRONG, J., concur.