# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| KING COUNTY, | No.  49347-1-II |
| Appellant, | |
| BNSF RAILWAY COMPANY, | |
| Petitioner, | |
| v. | |
| WASHINGTON UTILITIES AND TRANSPORTATION COMMISSION, a Washington state agency; PUGET SOUND ENERGY, | UNPUBLISHED OPINION |
| Respondents. | |

WORSWICK, J. — In 1971, Puget Sound Energy (PSE) constructed the Maloney Ridge Line, an 8.5-mile underground electrical extension line in Snoqualmie National Forest.  PSE later connected King County and others to this line and executed special service agreements.  The Maloney Ridge Line will need to be replaced over the next few years.  King County sought a declaration that PSE was solely responsible for replacing the line and for paying the replacement costs through its general electric distribution rates.  Ultimately, the superior court affirmed the Washington Utilities and Transportation commission's order.  The commission ruled that PSE must replace the Maloney Ridge Line but that King County and the other Maloney Ridge Line customers must pay all construction costs of the line in excess of $335,000 and all operating and maintenance expenses, as provided by their special service agreements with PSE.

No. 49347-1-II

King County appeals the commission's final order[1] denying in part King County's petition that sought a declaration that PSE was obligated to replace the Maloney Ridge Line and recover the replacement costs through customer rates. King County argues that the commission's order (1) is erroneous and arbitrary and capricious because the commission (a) found that the Maloney Ridge Line was not part of PSE's general distribution system, (b) misinterpreted PSE's service agreement with King County and Schedule 85, (c) considered PSE's economic feasibility under Schedule 80, and (d) applied a fact-based analysis and (2) was discriminatory because it (a) granted an undue or unreasonable preference to Schedule 24 customers and (b) resulted in rate discrimination. Because the commission's order was not erroneous or arbitrary and capricious, we affirm.

FACTS

I. BACKGROUND

In 1971, General Telephone Company of the Northwest (GTE) requested that PSE, then known as Puget Sound Power & Light, install an underground electric line extension in the Snoqualmie National Forest from PSE's general distribution system. PSE entered into a special agreement with GTE and agreed to extend its electrical service and install the line extension so long as GTE paid all construction and maintenance costs for the line extension. The line extension is now known as the Maloney Ridge Line.

PSE later connected King County and two additional entities to the Maloney Ridge Line. PSE executed a special service agreement with King County that required it to share all of the

_____

[1] We review the commission's findings and not the superior court's decision. *US W. Commc'ns, Inc. v. Wash. Utils. & Transp. Comm'n*, 134 Wn.2d 48, 56, 949 P.2d 1321 (1997).

Maloney Ridge Line's operating costs with the three other Maloney Ridge Line customers. King County's service agreement with PSE provides that "[o]perating costs shall include any repair and maintenance costs incurred by [PSE] pursuant to [PSE's responsibility to repair and maintain the line], and costs in connection with securing or maintaining operating rights." Administrative Record (AR) (Pleadings) at 31. Historically, only King County and the other Maloney Ridge Line customers have paid the construction and maintenance costs of the Maloney Ridge Line.

King County's service agreement incorporates numerous tariff schedules.[2] The agreement states that it is "subject to the General Rules and Provisions (Schedule 80) of [PSE's] Electric Tariff G and to Schedule 85 of such Tariff."[3] AR (Pleadings) at 32.

Schedule 85 provides: "[PSE] shall own, operate, maintain and repair all electric distribution facilities installed by or for [PSE] under this schedule, including replacement of such facilities if necessary so long as such replacement is not inconsistent with this schedule or a contract governing such facilities." AR (Exhibits) at 658. Schedule 80 lists the general rules and provisions that apply to all services PSE provides. Schedule 80 includes a "Refusal of Service" provision. AR (Exhibits) at 644. Under Schedule 80's refusal of service provision, PSE "shall not be required to provide service if to do so would be economically unfeasible." AR (Exhibits) at 644.

---

[2] Tariff schedules show "all forms of contract or agreement [and] all rules and regulations relating to rates, charges, or service." RCW 80.28.050; *Citoli v. City of Seattle*, 115 Wn. App. 459, 484, 61 P.3d 1165 (2002).

[3] Tariff G includes all of PSE's contracts, agreements, rules, and regulations regarding its rates, charges, and services to its customers. *See Citoli*, 115 Wn. App. at 484. Tariff G includes several tariff schedules that each outline the rules, rates, and services relating to particular customers.

PSE provides King County and the three other Maloney Ridge Line customers with electric service under PSE's Tariff G. PSE's general distribution system provides service to approximately 115,000 nonresidential customers under Schedule 24 of Tariff G, including King County and the other Maloney Ridge Line customers. Schedule 24 establishes rates for PSE's electric service and allows PSE to recover a share of its costs from its general distribution system. This includes power costs and recovery of transmission and distribution system costs. The general distribution system does not include the Maloney Ridge Line.

King County and the other Maloney Ridge Line customers have always been treated differently than other Schedule 24 customers. The Maloney Ridge Line customers pay Schedule 24 rates for electric service as well as all operating costs of the line. The other Schedule 24 customers pay only for Schedule 24 rates and do not pay any operating costs of the Maloney Ridge Line.

The Maloney Ridge Line is approximately 8.5 miles in length, and it is located in steep, mountainous terrain that is subject to harsh environmental conditions such as rain, snow, and landslides. As a result, the Maloney Ridge Line experiences increasingly frequent service interruptions, and it will likely need to be replaced within the next few years. PSE offered to completely replace or replace portions of the Maloney Ridge Line if King County and the other Maloney Ridge Line customers paid all replacement costs. PSE estimates that complete replacement of the Maloney Ridge Line would cost approximately $5.3 million. King County and the other Maloney Ridge Line customers declined PSE's offer.

## II. PROCEDURE

On June 26, 2014, King County filed a petition for a declaratory order with the commission.[4] King County's petition sought a declaration that PSE was obligated to replace the Maloney Ridge Line and to pay to replace the Maloney Ridge Line by recovering the replacement costs from PSE's 115,000 nonresidential customers through Schedule 24 general distribution rates. The commission converted the declaratory order proceeding to an adjudication.[5]

Following evidentiary hearings, the commission issued an initial order (Order 03) with findings and conclusions. Order 03 granted in part and denied in part King County's petition. Specifically, the commission ordered that PSE must replace the Maloney Ridge Line so long as King County and the other Maloney Ridge Line customers paid all construction costs of the line in excess of $335,000 and all operating and maintenance expenses, as provided by their special service agreements with PSE.

King County sought administrative review of Order 03. On October 13, 2015, the commission issued its final order (Order 04) denying King County's petition for administrative review. Order 04 explicitly adopted and incorporated the findings and conclusions of Order 03.

The commission found that King County's service agreement with PSE, as well as Schedules 80 and 85, did not require either PSE or King County to pay the replacement costs of

---

[4] The other Maloney Ridge Line customers joined King County in its petition to the commission. However, King County is the only customer remaining on appeal.

[5] Under WAC 480-07-930(4), the commission may convert the form of a declaratory order proceeding and conduct the matter as an adjudicative proceeding. The commission determined that conversion was necessary to develop the record and to rule on the petition.

the Maloney Ridge Line. Accordingly, the commission undertook a fact-based analysis to determine which party was responsible for paying to replace the Maloney Ridge Line and considered the nature of PSE's facilities, the economics of replacing the Maloney Ridge Line, and the impact on King County and the other Maloney Ridge Line customers. The commission concluded that other Schedule 24 customers should not pay to replace the Maloney Ridge Line because the electric line extension was dedicated to serving only the Maloney Ridge Line customers.

On November 12, King County filed a petition in superior court seeking judicial review of the commission's Order 04. The superior court affirmed Order 04. King County appeals.

ANALYSIS

I. THE MALONEY RIDGE LINE'S REPLACEMENT COSTS

King County argues that the commission's order is erroneous and arbitrary and capricious because the commission (a) found that the Maloney Ridge Line was not part of PSE's general distribution system, (b) misinterpreted PSE's service agreement with King County and Schedule 85, (c) considered PSE's economic feasibility under Schedule 80, and (d) applied a fact-based analysis. We disagree.[6]

A. *Legal Principles*

We review the commission's findings under a substantial evidence standard, and its findings are prima facie correct. *US W. Commc'ns, Inc. v. Wash. Utils. & Transp. Comm'n*, 134

---

[6] PSE argues that we should treat the challenged findings as verities on appeal because King County does not properly assign error to them. Here, King County makes a separate assignment of error for each finding it challenges in its brief. Accordingly, King County complied with RAP 10.3(g), and we review the challenged findings.

Wn.2d 74, 86, 949 P.2d 1337 (1997). Substantial evidence to support a commission's findings is "'evidence sufficient to persuade a fair-minded person of their truth.'" *City of Vancouver v. Pub. Emp't Relations Comm'n*, 180 Wn. App. 333, 347, 325 P.3d 213 (2014), (quoting 107 Wn. App. 694, 703, 33 P.3d 74 (2001)). However, the commission's factual findings will not stand if "[t]he order is not supported by evidence that is substantial when viewed in light of the whole record before the court." RCW 34.05.570(3)(e).

We review the commission's application of the law de novo. *See Attorney Gen.'s Office v. Wash. Utils. & Transp. Comm'n*, 128 Wn. App. 818, 825, 116 P.3d 1064 (2005). However, we accord the commission's view of the law substantial weight when it falls within its expertise in that special field of the law. *See N. Pac. Transp. Co. v. Wash. Utils. & Transp. Comm'n*, 69 Wn.2d 472, 476-77, 418 P.2d 735 (1966).

"The Legislature created the [Utilities and Transportation] Commission to secure safe, adequate, and sufficient utility services for the public at just, fair, reasonable and sufficient rates." *US W. Commc'ns, Inc.*, 134 Wn.2d at 121. The commission has broad authority to regulate the rates, services, and practices of utility companies providing electric service in Washington. *Attorney Gen.'s Office*, 128 Wn. App. at 825. "Agencies have implied authority to do everything lawful and necessary to effectuate the powers granted to them." *Probst v. State Dep't of Ret. Sys.*, 167 Wn. App. 180, 188, 271 P.3d 966 (2012). We give substantial deference to the commission's judgment about how to best serve the public interest. *Attorney Gen.'s Office*, 128 Wn. App. at 824.

In reviewing the commission's action, we apply the standards of the Washington Administrative Procedure Act, codified in chapter 34.05 RCW. *Attorney Gen.'s Office*, 128 Wn.

App. at 824. Review of Order 04 is governed by RCW 34.05.570. *See US W. Commc'ns, Inc.*, 134 Wn.2d at 85. In pertinent part, RCW 34.05.570(3)(d), (i) provides that a court "shall grant relief from an agency order in an adjudicative proceeding only if it determines that . . . [t]he agency has erroneously interpreted or applied the law . . . [or] [t]he order is arbitrary or capricious."

The commission's action is arbitrary and capricious "only if it 'is willful and unreasoning and taken without regard to the attending facts or circumstances.'" *Attorney Gen.'s Office*, 128 Wn. App. at 824 (quoting *Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 383, 932 P.2d 139 (1997)). "'Where there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous.'" *Rios v. Dep't of Labor & Indus.*, 145 Wn.2d 483, 501, 39 P.3d 961 (2002) (quoting *Hillis*, 131 Wn.2d at 383). The arbitrary and capricious standard is highly deferential, and we will not set aside a discretionary decision absent a clear showing of abuse. *ARCO Prods. Co. v. Wash. Utils. & Transp. Comm'n*, 125 Wn.2d 805, 812, 888 P.2d 728 (1995).

B.    *PSE's General Distribution System*

King County argues that the commission erroneously applied the law and acted arbitrarily and capriciously by finding that the Maloney Ridge Line was not part of PSE's general distribution system.[7] We disagree.

---

[7] King County cites WAC 480-100-388 to support its argument that the Maloney Ridge Line is part of PSE's general distribution system. However, WAC 480-100-388 consists of "electric service reliability" definitions applying to WAC 480-100-393 and WAC 480-100-398, which require utilities to file plans for monitoring and reporting electric service reliability. Accordingly, WAC 480-100-388 does not provide a guideline for determining which lines comprise an electric company's general distribution system.

At the evidentiary hearing before the commission, David Nightingale, a senior regulatory engineering specialist for the commission testified that the Maloney Ridge Line was outside of PSE's general distribution system. Later during the evidentiary hearing, the following exchange took place between King County and PSE's Director of Revenue Requirements and Regulatory Compliance, Katherine Barnard:

> [KING COUNTY]: . . . [Y]ou make a statement that the Maloney Ridge line is not part of PSE's distribution system; is that correct?
>     [BARNARD]: I do.
>     . . . .
>     [BARNARD]: . . . The way that we look at this particular issue is that up to the—the basic distribution charge, or basic distribution system is covering their Schedule 24. Anything beyond that is—that eight and a half mile line is beyond our base system.

AR (Transcripts) at 61-62.

The commission found that the "Maloney Ridge Line is dedicated to serving [King County and the Maloney Ridge Line customers] and is an adjunct to, not part of, PSE's distribution system." AR (Pleadings) at 249. The commission noted that PSE recovered costs for the general distribution system through Schedule 24 rates. However, PSE recovered costs of the Maloney Ridge Line only from King County and the other Maloney Ridge Line customers and intentionally kept these costs separate from Schedule 24 rates.

In addition, the Maloney Ridge Line was installed under PSE's special service agreement with GTE, and it was not installed under any tariff schedule. The commission found that King County's service agreement required it to pay costs for the Maloney Ridge Line that were not imputed to Schedule 24 customers who were served only by PSE's general distribution system. The commission also found that the Maloney Ridge Line was not incorporated into the general distribution system for the purpose of providing electric service to Schedule 24 customers.

Evidence before the commission showed that the Maloney Ridge Line was constructed and is maintained under a service agreement requiring King County and the other Maloney Ridge Line customers to share all costs of the line extension. The Maloney Ridge Line receives electric service from PSE's general distribution system, but the Maloney Ridge Line does not provide service to the general distribution system. Further, Nightingale's and Barnard's testimony clearly showed that the Maloney Ridge Line was outside of PSE's general distribution system. Accordingly, the commission's finding that the Maloney Ridge Line was not part of PSE's general distribution system is supported by substantial evidence.

To the extent that King County argues that the commission's finding constitutes an arbitrary or capricious action, we disagree. The commission considered expert testimony that Schedule 24 customers never paid costs of the Maloney Ridge Line and that the Maloney Ridge Line customers had historically paid all the costs for that line. The commission determined that evidence and testimony that the Maloney Ridge Line was outside of PSE's general distribution system were clear and unrefuted. Even assuming there is room for two opinions regarding the Maloney Ridge Line's inclusion in PSE's general distribution system, the commission made its finding after exercising due consideration of the facts and circumstances at issue. Therefore, the commission's finding that the Maloney Ridge Line was not part of PSE's general distribution system was not made arbitrarily or capriciously.

C.    *The Service Agreement and Schedule 85*

King County argues that the commission erroneously interpreted the plain language of Schedule 85 and the service agreement because their plain language requires PSE to pay to replace the Maloney Ridge Line. Specifically, King County argues that because the service

agreement does not shift PSE's replacement obligation to King County and the other Maloney Ridge Line customers, PSE is required to pay to replace the Maloney Ridge Line under Schedule 85.  King County contends that because the plain language of Schedule 85 requires that PSE pay to replace the Maloney Ridge Line, the commission's application of a fact-based analysis was erroneous.  We disagree.

Utility companies must file tariff schedules with the commission showing "all forms of contract or agreement, all rules and regulations relating to rates, charges or service, used or to be used, and all general privileges and facilities granted or allowed."  RCW 80.28.050.  Once a utility company's tariff schedule is filed and approved, it has the force and effect of law.  *Citoli v. City of Seattle*, 115 Wn. App. 459, 484, 61 P.3d 1165 (2002).

We employ principles of statutory interpretation in interpreting a tariff.  115 Wn. App. at 484.  Interpretation of a tariff is a question of law.  *Nat'l Union Ins. Co. of Pittsburgh, Pa. v. Puget Sound Power & Light*, 94 Wn. App. 163, 171, 972 P.2d 481 (1999).  Our primary goal in interpreting a tariff is to determine and give effect to the commission's intent in approving a particular tariff.  94 Wn. App. at 173.

When a tariff's language is plain and unambiguous, we derive its meaning from the words of the tariff themselves and without judicial construction or interpretation.  *Citoli*, 115 Wn. App. at 484.  We may ascertain the plain meaning of nontechnical terms from their dictionary definitions.  *Pac. Cont'l Bank v. Soundview 90, LLC*, 167 Wn. App. 373, 384, 273 P.3d 1009 (2012).

King County's service agreement provides that PSE must repair and maintain the Maloney Ridge Line.  The service agreement is subject to Schedule 85 of PSE's Electric Tariff

11

G. Schedule 85 "sets forth the circumstances, terms and conditions under which [PSE] is responsible for the ownership, installation, maintenance, repair or replacement of electric distribution facilities." AR (Exhibits) at 647. The "Ownership of Facilities" provision of Schedule 85 provides:

> [PSE] shall own, operate, maintain and repair all electric distribution facilities installed by or for [PSE] under this schedule, including replacement of such facilities if necessary so long as such replacement is not inconsistent with this schedule or a contract governing such facilities. . . . [PSE] shall not own and shall have no responsibility to operate, maintain, repair or replace any electric distribution facilities that were not installed by or for [PSE] under this schedule.

AR (Exhibits) at 658.

The commission stated that the service agreement did not expressly provide that PSE must pay to replace the Maloney Ridge Line. However, the service agreement does state that the electric service PSE provides to King County is governed by the terms and conditions of Electric Tariff G. As a result, the commission looked to Electric Tariff G to determine under which circumstances PSE must provide electric service to King County. The commission noted that Schedule 85 made no mention of payment responsibilities, let alone payment responsibility for replacement of an electric distribution facility. The commission concluded that it could not interpret Schedule 85's silence to reflect PSE's intent to pay all costs associated with owning, operating, maintaining, and repairing all electric distribution facilities installed by PSE. Further, the commission concluded that Schedule 85 alone did not determine who was responsible for paying the replacement costs of the Maloney Ridge Line.

King County contends that because Schedule 85 provides that PSE is responsible for replacing electric distribution facilities, Schedule 85 also provides that PSE must *pay* to replace

distribution facilities.[8] King County argues that the plain meaning of the term "responsible" in this context means that PSE is financially obligated to pay to replace distribution facilities. Because "responsible" is a nontechnical term, we look to the dictionary for guidance. *Pac. Cont'l Bank*, 167 Wn. App. at 384. "Responsible" is generally defined as "likely to be called upon to answer" and "able to respond or answer for one's conduct and obligations." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1935 (2002). Because the plain meaning of "responsible" does not suggest financial responsibility, we reject King County's argument that Schedule 85 plainly provides that PSE must pay to replace the Maloney Ridge Line.[9]

Reading the service agreement and Schedule 85 together, PSE is not required to pay to replace the Maloney Ridge Line. King County's service agreement does not provide for replacement of the Maloney Ridge Line. However, the service agreement is subject to Schedule 85. Schedule 85 states that PSE is responsible for replacing electric extension lines installed under Schedule 85, but Schedule 85 does not expressly state that PSE is *financially* responsible for replacing extension lines. Moreover, the Maloney Ridge Line was installed under PSE's special service agreement with GTE and not under Schedule 85. Because Schedule 85 does not include a provision regarding payment responsibility for replacing an electric distribution facility

---

[8] King County cites to an unrelated provision of Schedule 85 to support its argument. The provision states that "the park/community property owner or Multi-Family Residential Structure owner shall be responsible for ownership and operation of all new and existing underground Service Lines . . . and for all costs for installation, maintenance, repair and replacement thereof." AR (Exhibits) at 658. This provision is unpersuasive because King County's service agreement, and not Schedule 85, details its operational, maintenance, and repair costs.

[9] Because the plain language of Schedule 85 does not require PSE to pay to replace the Maloney Ridge Line, we review whether the commission erred in applying a fact-based analysis later in this opinion.

and because the Maloney Ridge Line was not installed under Schedule 85, King County's argument fails.

D. *Schedule 80 and PSE's Economic Feasibility*

King County also argues that the commission erroneously applied the law and acted arbitrarily and capriciously in considering Schedule 80's economic feasibility language because (1) the language applies only to new and additional service and (2) the language is no longer viable under the commission's rules.[10] We disagree.

1. Applicability of the Economic Feasibility Language

As an initial matter, King County argues that the commission's consideration of Schedule 80's economic feasibility language was erroneous and arbitrary and capricious because it applies only to new and additional services. We disagree because King County's interpretation is contrary to the plain language of Schedule 80.

Principles of statutory interpretation apply to the interpretation of a tariff. *Citoli*, 115 Wn. App. at 484. When a tariff's language is plain and unambiguous, we derive its meaning from the words of the tariff themselves without judicial construction or interpretation. 115 Wn. App. at 484. If a tariff's language is subject to more than one meaning, it is ambiguous, and its interpretation is an issue of law. 115 Wn. App. at 484.

King County's service agreement expressly states that the agreement is subject to the provisions in Schedule 80 of PSE's Electric Tariff G. Schedule 80 includes the general rules and

---

[10] King County also argues that Schedule 80's general economic feasibility language does not take precedence over Schedule 85's more specific language. We do not address this argument because we have already determined that the commission did not err in finding that the plain language of Schedule 85 does not require PSE to pay to replace the Maloney Ridge Line.

No. 49347-1-II

provisions that apply to all services PSE provides. Paragraph 9 of Schedule 80 provides examples of when PSE can refuse to provide electric service. Under paragraph 9 of Schedule 80, PSE

> may refuse to connect an applicant for service or may refuse to render additional service to a Customer when such service will adversely affect service being rendered to other Customers or where the applicant or Customer has not complied with state, county, or municipal codes or regulations concerning the rendition of such service.
>
> The Company may refuse to serve an applicant or a Customer if, in its judgment, said applicant's or Customer's installation of wiring or electrical equipment is hazardous, or of such character that satisfactory service cannot be provided.
>
> The installation of proper protective devices on the applicant's or Customer's premises at the applicant's or Customer's expense may be required whenever the Company deems such installation necessary to protect its property or that of its other Customers.
>
> The Company shall not be required to connect with or render service to an applicant unless and until it has all necessary operating rights, including rights-of-way, easements, franchises, and permits.
>
> The Company may refuse to connect service to a master meter in any new building with permanent occupants when: there is more than one dwelling unit in the building or property; the occupant of each unit has control over a significant portion of electric energy consumed in each unit; and the long-run benefits of a separate meter for each customer exceed the cost of providing separate meters.
>
> The Company shall not be required to provide service if to do so would be economically unfeasible.

AR (Exhibits) at 644.

The commission determined that Schedule 80's economic feasibility language was not dispositive of who must pay to replace the Maloney Ridge Line. Instead, the commission reasoned that PSE's economic feasibility in replacing the Maloney Ridge Line was one of several important factors to consider.

15

Paragraph 9 of Schedule 80 provides a number of reasons for PSE to refuse service to an applicant or a customer. While some reasons included in paragraph 9 are limited to customers or applicants seeking new or additional services, the economic feasibility language is not modified by a specified class of customers. Accordingly, Schedule 80's economic feasibility language is plain and unambiguous and is not limited to new construction. Therefore, the commission's consideration of Schedule 80's economic feasibility language was not erroneous.

To the extent King County argues that the commission's consideration of the economic feasibility language in Schedule 80 was erroneous and made arbitrarily and capriciously, we disagree. The commission examined paragraph 9 of Schedule 80 in its entirety. After considering each provision of paragraph 9, the commission determined that Schedule 80 alone did not determine which party was responsible for paying to replace the Maloney Ridge Line. Accordingly, the commission gave reasoned consideration to the attending facts and circumstances. Thus, it did not act arbitrarily and capriciously in considering Schedule 80's economic feasibility language.

2. Viability of the Economic Feasibility Language

King County argues that the commission acted arbitrarily and capriciously in considering the economic feasibility language because the economic feasibility test is no longer a viable consideration under commission precedent. Specifically, King County argues that because the commission repealed WAC 480-100-056, which allowed a utility company to refuse service merely because it was economically unfeasible, the commission acted arbitrarily and capriciously in analyzing Schedule 80's economic feasibility language. We disagree.

16

In 2001, the commission repealed WAC 480-100-056 and adopted WAC 480-100-123, which included language from WAC 480-100-056. *In re Adopting and Repealing Rules in Chapter 480-100 WAC Relating to Rules Establishing Requirements for Electric Companies*, Docket UE-990473, General Order No. R-495, at 1 (Wash. Utils. & Transp. Comm'n Dec. 3, 2001).[11] In doing so, the commission noted that existing language in WAC 480-100-056 permitted electric companies to refuse new or additional service when it would be economically unfeasible for the company to offer that service. General Order No. R-495, at 4. The commission determined that the rule language should not contain specific examples of reasons to refuse service and that the general and vague "economically unfeasible" language was not compliant with the narrow scope of the rule. General Order No. R-495, at 2, 4. Instead, the commission stated that refusal to serve issues should be brought before the commission for resolution on a case-by-case basis and would likely be resolved by applying a fact-based analysis. General Order No. R-495, at 4.

Here, the commission determined that it would "adhere to the statement in the order [repealing WAC 480-100-056] that 'Commission resolution of [refusal] to serve issues is likely to be based on fact-[based] analysis.'" AR (Pleadings) at 242 (internal citations omitted). As a result, the commission determined that the economic feasibility language in Schedule 80's refusal to serve provision was an important factor to consider in its fact-based analysis even though PSE's economic feasibility was not dispositive of whether PSE was required to pay to replace the Maloney Ridge Line.

---

[11] Available at: http://lawfilesext.leg.wa.gov/law/wsr/2001/24/01-24-076.htm.

17

To the extent that King County argues that the commission's consideration of the economic feasibility language was erroneous or constituted an arbitrary or capricious action, we disagree. The commission carefully considered the economic feasibility language in Schedule 80's refusal to serve provision in the context of the commission's earlier comments regarding the repeal of WAC 480-100-056. The commission's reliance on its order repealing WAC 480-100-056 and its consideration of refusal to serve issues on a case-by-case basis was within its broad authority to regulate electric service. Even if there is room for two opinions regarding the viability of Schedule 80's economic unfeasibility language, the commission's decision was made with due consideration to the evidence and documents presented at the hearing. Therefore, the commission did not act arbitrarily or capriciously.

E.    *Fact-Based Analysis*

King County also argues that the commission improperly applied a fact-based analysis to determine who was responsible for paying to replace the Maloney Ridge Line. King County specifically argues that the commission's ability to conduct a fact-based analysis is limited to issues involving new or additional service. We disagree.

In repealing WAC 480-100-056, the commission determined that the regulation should not contain specific examples of reasons for a utility company to refuse service. General Order No. R-495, at 2, 4. Instead, the commission stated that refusal to serve issues should be brought before the commission to be resolved on a case-by-case basis and by applying a fact-based analysis. General Order No. R-495, at 4.

Here, PSE refused to pay to replace the Maloney Ridge Line by relying on Schedule 80's language allowing it to refuse service to a customer when providing that service would be

economically unfeasible. In determining whether Schedule 80 allowed PSE to refuse to pay to replace the Maloney Ridge Line, the commission employed a fact-based analysis. As a result, the commission reasoned that PSE's economic feasibility was a factor it could consider. The commission noted that the repeal of WAC 480-100-056 meant only that "economic feasibility [was] not the sole determinant of the extent to which PSE must provide . . . service." AR (Pleadings) at 242. Instead, the commission considered a number of factors in determining who was responsible for paying to replace the Maloney Ridge Line, including the nature of PSE's facilities, the economics of replacing the line, and the impact on King County and the other Maloney Ridge Line customers.

King County argues that the commission's ability to conduct a fact-based analysis is limited to issues involving new or additional service. However, in repealing WAC 480-100-056, the commission stated that refusal to serve issues, "when they arise and cannot be resolved otherwise, should be brought to the commission for resolution." General Order No. R-495, at 4. The commission did not state that only refusal of new or additional service was subject to a fact-based analysis, and it contemplated that the commission must resolve any refusal to serve issue that cannot otherwise be settled. General Order No. R-495, at 4. Accordingly, King County's argument fails.

Here, the commission, guided by comments in the order repealing WAC 480-100-056, employed a fact-based analysis to determine who was obligated to pay. This fact-based analysis was within the commission's broad authority to regulate electric services. *Attorney Gen.'s Office*, 128 Wn. App. at 824-25. Additionally, as the commission noted in repealing WAC 480-100-056, refusal to serve issues should be resolved on a case-by-case basis. Further, we give

substantial deference to the commission's judgment about how to best serve the public interest. *Attorney Gen.'s Office*, 128 Wn. App. at 824. Accordingly, the commission's fact-based analysis was not erroneous.

## II. COST DISCRIMINATION

King County also argues that the commission's order was discriminatory because it ordered King County to pay to replace the Maloney Ridge Line when other Schedule 24 customers are not required to pay to replace their electric distribution lines. Specifically, King County argues that the commission's order (a) granted an undue or unreasonable preference to Schedule 24 customers and (b) resulted in rate discrimination between King County and other Schedule 24 customers. We do not review these issues.

A.      *Undue Preference*

King County argues that the commission's order resulted in an undue or unreasonable preference to Schedule 24 customers because Schedule 24 customers are not required to pay for replacement of their own extension lines. We do not review this claim of error.

Judicial review of a commission's final order is limited by the provisions of Washington's Administrative Procedure Act, codified by title 34 RCW. *See Lang v. Dental Quality Assurance Comm'n*, 138 Wn. App. 235, 250, 156 P.3d 919 (2007), *review denied*, 162 Wn.2d 1021 (2008). RCW 34.05.554(1) generally provides that new issues may not be raised for the first time on appeal. *Lang*, 138 Wn. App. at 250. However, RCW 34.05.554(1) provides exceptions when a party is without knowledge or notice and when there is a controlling change in case law.

In its petition to the commission, King County did not argue that requiring it to pay to replace the Maloney Ridge Line would result in an undue or unreasonable preference to other Schedule 24 customers. As a result, the commission was unable to exercise its discretion regarding undue or unreasonable preference. King County raises this issue for the first time on appeal, and the exceptions listed in RCW 34.05.554(1) do not apply. Thus, we do not review this claim of error.

B.      *Rate Discrimination*

King County argues that the commission's order resulted in rate discrimination between King County and other Schedule 24 customers because King County and other Schedule 24 customers receive service from PSE under the same or substantially similar circumstances or conditions. This issue is not ripe for review.[12]

We decline to review issues that are not ripe for review. *See Clark County v. Rosemere Neigh. Ass'n*, 170 Wn. App. 859, 888-89, 290 P.3d 142 (2012). A controversy is ripe when

> "(1) an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative or moot disagreement, (2) between parties having genuine and opposing interests, (2) which involves interests that are direct and substantial rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

170 Wn. App. at 888 (quoting *Bellewood No. 1, LLC v. LOMA*, 124 Wn. App. 45, 49-50, 97 P.3d 747 (2004)).

---

[12] Accordingly, we cannot review King County's brief argument that the other Schedule 24 customers would pay a reasonable rate in paying to replace the Maloney Ridge Line. King County acknowledges in its brief that rate-making principles, and therefore its argument, are not relevant.

No. 49347-1-II

The commission did not order King County to pay a certain amount, and it did not set a rate for King County and the other Maloney Ridge Line customers to pay in replacing the extension line. Moreover, PSE has not yet filed a tariff schedule establishing the rate King County must pay to replace the extension line. Accordingly, there is no actual or existing dispute regarding the discriminatory effect of any rate requiring King County to pay to replace the Maloney Ridge Line. Until PSE sets its rate to recover the replacement costs or the commission sets a rate after a hearing, we would be speculating about any possible rate discrimination between King County and the other Schedule 24 customers.

CONCLUSION

We affirm the commission's decision.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Bjorgen, C.J.

_____
Lee, J.

22