# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SYNNEX CORPORATION, | No. 59561-3-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE, | PUBLISHED OPINION |
| Respondent. | |

MAXA, J. – SYNNEX Corp. (Synnex) appeals the superior court's order denying its petition for declaratory relief regarding the validity of portions of a Department of Revenue (DOR) rule, WAC 458-20-193 (Rule 193). Synnex is an out-of-state wholesale seller of information technology products that engages in sales involving Washington customers that may subject them to wholesale business and occupation (B&O) taxes. For B&O tax purposes, sales that occur by product sellers with a nexus to Washington are "sourced" – *i.e.*, attributed – to a particular location, which determines whether the seller must pay B&O tax on the sale.

Synnex's wholesale sales include "drop shipments." In a drop shipment, two sales occur. First, a customer (or retail purchaser) purchases a product from a retail seller. Second, the retail seller (or wholesale purchaser) purchases the product from a wholesale seller and directs the wholesaler to deliver the product directly to the customer. The retail seller/wholesale purchaser never receives the product.

At issue here is a drop shipment where a Washington customer orders a product from an out-of-state retail seller, who purchases the product at wholesale from Synnex. Synnex then delivers the product directly to the Washington customer. The question is whether Synnex is required to pay B&O taxes on its wholesale sale to the retail seller/wholesale purchaser.

RCW 82.32.730(1) provides "sourcing" rules to determine when a sale is subject to Washington B&O taxes. If a sale is sourced to a Washington location, the seller is required to pay B&O taxes. If a sale is sourced to a location outside of Washington, the seller is not required to pay B&O taxes.

RCW 82.32.730(1)(b) states that if property is "not received by the purchaser at a business location of the seller, the sale is sourced to the location where receipt by the purchaser . . . occurs." RCW 82.32.730(1)(c) states that "[w]hen (a) and (b) of this subsection do not apply, the sale is sourced to the location indicated by an address for the purchaser that is available from the business records of the seller." RCW 82.32.730 does not define "purchaser."

DOR enacted the current version of Rule 193 in 2015. Rule 193(301) states, "The place of receipt in a drop shipment transaction is where the property is delivered (i.e., the seller's customer's location)." Rule 193(304) and (305) state that the wholesale seller is subject to B&O tax when the customer receiving the property is located in Washington.

Synnex argues that Rule 193 exceeds DOR's statutory authority. Synnex asserts that because its wholesale purchaser never receives the product in a drop shipment transaction, RCW 82.32.730(1)(b) is inapplicable. Instead, RCW 82.32.730(1)(c) sources the sale to the location of the out-of-state wholesale purchaser/retail seller. According to Synnex, Rule 193(301), (304) and (305)'s provisions that source the sale to the Washington customer's location are invalid

2

because they are inconsistent with RCW 82.32.730(1)(c). Synnex also argues that DOR acted arbitrarily and capriciously in enacting Rule 193.

DOR argues that Rule 193(301), (304) and (305) explain the application of RCW 82.32.730(1)'s sourcing rules to drop shipment transactions. DOR claims that sourcing the sale to the Washington customer's location implements RCW 82.32.730(1)(b) because the customer can be included in the meaning of "purchaser" in that subsection and the property is received at the customer's location.

We hold that (1) DOR did not exceed its statutory authority in issuing Rule 193(301), (304) and (305) because the rules reasonably implement DOR's interpretation of the ambiguous term "purchaser" in RCW 82.32.730(1)(b); and (2) DOR did not act arbitrarily or capriciously in enacting Rule 193. Accordingly, this we affirm the superior court's denial of Synnex's petition for declaratory relief.

FACTS

Synnex is a Delaware corporation with a principal place of business in California. Synnex is a distributor of information technology products and makes wholesale sales of those products throughout the United States. Synnex ships its products from locations outside of Washington, and has no physical presence in Washington. However, Synnex admits that it is subject to wholesale B&O taxes for sales that are properly sourced to Washington under RCW 82.32.730(1).

The transactions at issue in this case are Synnex's wholesale sales made as drop shipments. Rule 193(301) describes drop shipments: "A drop shipment generally involves two separate sales. A person (the [re]seller) contracts to sell tangible personal property to a customer. The [re]seller then contracts to purchase that property from a wholesaler and instructs

that wholesaler to deliver the property directly to the [re]seller's customer." In the second sale of a drop shipment, the retail seller is also the wholesale purchaser of the tangible personal property.

In December 2021, DOR's compliance division issued a notice of B&O taxes due against Synnex for the period from July 1, 2015 to September 30, 2019 in the amount of $6,119,251.25. A DOR audit found that based on Synnex's wholesale sales involving Washington customers, Synnex owed $4,182,197.38 in wholesale B&O taxes plus penalties and interest.

Synnex challenged the assessment. Synnex acknowledged that it made significant sales involving Washington customers. But it argued that wholesale sales it made to non-Washington wholesale purchasers should be sourced to the purchasers' locations outside of Washington. The compliance division declined to adjust the assessment, stating that the drop shipment sales involving Washington customers were properly sourced to Washington under Rule 193.

Synnex then petitioned to DOR's Administrative Review and Hearings Division for an adjustment of the assessment. DOR's tax review officer denied the petition, ruling that Synnex was subject to B&O taxes under Rule 193 when Synnex drop shipped products to consumers in Washington.

Rather than file a refund action, Synnex filed a petition for declaratory relief in Thurston County superior court asking the court to declare sections (301), (304), and (305) of Rule 193 invalid because they exceeded DOR's statutory authority and was enacted in an arbitrary and capricious manner. The superior court denied Synnex's petition.

Synnex appeals the superior court's denial of its petition to declare portions of Rule 193 invalid.

4

ANALYSIS

A.    REVIEW OF AGENCY RULES

The Administrative Procedure Act allows a party to challenge the validity of an agency

rule:

> The validity of any rule may be determined upon petition for a declaratory judgment addressed to the superior court of Thurston county, when it appears that the rule, or its threatened application, interferes with or impairs or immediately threatens to interfere with or impair the legal rights or privileges of the petitioner. The declaratory judgment order may be entered whether or not the petitioner has first requested the agency to pass upon the validity of the rule in question.

RCW 34.05.570(2)(b)(i).  Parties can petition for judicial review of an agency rule at any time.

RCW 34.05.542(1).

"[T]he court shall declare the rule invalid only if it finds that: The rule violates

constitutional provisions, the rule exceeds the statutory authority of the agency; the rule was

adopted without compliance with statutory rule-making procedures; or the rule is arbitrary and

capricious."  RCW 34.05.570(2)(c); *see also Nw. Pulp & Paper Ass'n v. Dep't of Ecology*, 200

Wn.2d 666, 672, 520 P.3d 985 (2022).  The party challenging a rule bears the burden of proving

its invalidity.  RCW 34.05.570(1)(a); *Bassett v. Dep't of Ecology*, 8 Wn. App. 2d 284, 297, 438

P.3d 563 (2019).

An agency has no authority to amend tax statutes by regulation.  *Ctr. for Biological

Diversity v. Dep't of Fish & Wildlife*, 14 Wn. App. 2d 945, 967, 474 P.3d 1107 (2020).  "Rules

that are not consistent with or are broader than the statutes they implement are invalid."  *Id.*

However, administrative rules written within the framework of the applicable statutes do not

exceed statutory authority.  *Id.*  An agency does not exceed its statutory authority as long as the

rule is " 'reasonably consistent with the controlling statute[s].' "  *Id.* (alterations in original)

(quoting *Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 646, 62 P.3d 462 (2003));

*see also Dep't of Revenue v. Gamestop, Inc.*, 8 Wn. App. 2d 74, 82, 436 P.3d 435 (2019) ("We presume that a regulation is valid if it is reasonably consistent with the statute it implements.").

The legislature has charged DOR with administering and enforcing the tax code. *See* RCW 82.32.300(1), (2)(a). "An agency charged with the administration and enforcement of a statute may interpret ambiguities within the statutory language through the rule making process." *Edelman v. State ex rel. Public Disclosure Comm'n*, 152 Wn.2d 584, 590, 99 P.3d 386 (2004). "[D]eference is accorded to the agency charged with the administration and enforcement of the relevant, ambiguous statute." *Wild Fish Conservancy v. Dep't of Fish and Wildlife*, 198 Wn.2d 846, 860, 502 P.3d 359 (2022). And "agencies may adopt rules to fill in gaps in legislation where doing so is necessary to the effectuation of a general statutory scheme." *Lenander v. Dep't of Ret. Sys.*, 186 Wn.2d 393, 411, 377 P.3d 199 (2016).

Specific to DOR, the Supreme Court has stated that if a tax statute is ambiguous, a court should give "great weight" to DOR's interpretations that are within the agency's "special expertise." *First Student, Inc. v. Dep't of Revenue*, 194 Wn.2d 707, 717, 451 P.3d 1094 (2019); *see also Wild Fish Conservancy*, 198 Wn.2d at 860 ("Generally, where the statute is ambiguous and within the agency's specialized expertise, we accord great weight to the agency's interpretation.").

We review the validity of an agency rule de novo. *Ctr. for Env't Law & Pol'y v. Dep't of Ecology*, 196 Wn.2d 17, 28, 468 P.3d 1064 (2020).

B.    STATUTORY INTERPRETATION

This case involves the interpretation of RCW 82.32.730(1). Statutory interpretation is a question of law that we review de novo. *Protective Admin. Servs., Inc. v. Dep't of Revenue*, 24 Wn. App. 2d 319, 325, 519 P.3d 953 (2022). When interpreting a statute, our goal is to

determine and give effect to the legislature's intent. *Id.* at 330. We consider the language of the statute, the context of the statute, related statutes, and the statutory scheme as a whole. *Randy Reynolds & Assocs. Inc. v. Harmon*, 193 Wn.2d 143, 155, 437 P.3d 677 (2019).

"If the statute defines a term, we must rely on that provided definition." *Cave Props. v. City of Bainbridge Island*, 199 Wn. App. 651, 656, 401 P.3d 327 (2017). Undefined words in statutes must be given their plain and ordinary meaning and interpreted in the context of the statute. *Ekelmann v. City of Poulsbo*, 22 Wn. App. 2d 798, 807, 513 P.3d 840 (2022). We may refer to dictionary definitions to determine that plain meaning. *Clark County v. Portland Vancouver Junction R.R., LLC*, 17 Wn. App. 2d 289, 295, 485 P.3d 985 (2021). We may not add words to a statute " 'where the legislature has chosen not to include them.' " *Porter v. Kirkendoll*, 194 Wn.2d 194, 212 449 P.3d 627 (2019) (quoting *Rest Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003)). And we do not " 'rewrite plain statutory language under the guise of construction.' " *Madsen v. State*, 33 Wn. App. 2d 371, 380, 561 P.3d 1216 (2025) (quoting *McColl v. Anderson*, 6 Wn. App. 2d 88, 91, 429 P.3d 1113 (2018)).

A term in a statute is ambiguous if it is subject to more than one reasonable interpretation. *Madsen*, 33 Wn. App. 2d at 380. "Where two interpretations of statutory language are equally reasonable, our canons of construction direct us to adopt 'the interpretation which better advances the overall legislative purpose.' " *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 729, 406 P.3d 1149 (2017) (quoting *Weyerhaeuser Co. v. Dep't of Ecology*, 86 Wn.2d 310, 321, 545 P.2d 5 (1976)).

C.      OVERVIEW OF B&O TAX AND SOURCING

Washington imposes a B&O tax on "every person that has a substantial nexus with this state . . . for the act or privilege of engaging in business activities." RCW 82.04.220(1). The

Supreme Court has emphasized that " 'it is obvious that the legislature intended to impose the business and occupation tax upon virtually all business activities carried on within the state.' " *Avnet, Inc. v. Dep't of Revenue*, 187 Wn.2d 44, 50-51, 384 P.3d 571 (2016) (quoting *Time Oil Co. v. State*, 79 Wn.2d 143, 146, 483 P.2d 628 (1971)).

One way of measuring B&O taxes is by gross proceeds of sales. RCW 82.04.220(1). Different tax rates apply for retail sales and wholesale sales. RCW 82.04.250(1); RCW 82.04.270.

For entities that engage in business in Washington as well as in other states, Washington imposes B&O taxes based only on the amount of business income allocated to Washington. RCW 82.04.067(2). Income from retail sales and wholesale sales are allocated according to the sourcing rules in RCW 82.32.730. RCW 82.04.067(2)(a)(ii).

RCW 82.32.730(1) outlines the sourcing rules under different scenarios:

(a) When tangible personal property . . . is *received by the purchaser at a business location of the seller*, the sale is sourced to that business location.

(b) When the tangible personal property . . . is *not received by the purchaser at a business location of the seller*, the sale is sourced to the location where receipt by the purchaser or the purchaser's donee, designated as such by the purchaser, occurs, including the location indicated by instructions for delivery to the purchaser or donee, known to the seller.

(c) *When (a) and (b) of this subsection do not apply*, the sale is sourced to the location indicated by an address for the purchaser that is available from the business records of the seller that are maintained in the ordinary course of the seller's business when use of this address does not constitute bad faith.

(Emphasis added.) RCW 82.32.730 does not provide a definition of "purchaser."

RCW 82.32.730(9)(f) defines "receive" or "receipt" as "taking possession of tangible personal property, making first use of digital automated services or other services, or taking

possession or making first use of digital goods or digital codes, whichever comes first. 'Receive' and 'receipt' do not include possession by a shipping company on behalf of the purchaser."

C.      ADOPTION OF RULE 193

1.    Former Versions

The earliest version of Rule 193 was adopted in 1983. Former WAC 458-20-193B (1983). The rule stated, "Sales to persons in this state are taxable when the property is shipped from points outside this state to the buyer in this state." Former Rule 193B.

In 1992, before the legislature enacted RCW 82.32.730's sourcing statute, DOR adopted former WAC 458-20-193 (1992) (former Rule 193). B&O taxes were imposed on goods "received by the purchaser in this state." Former Rule 193(7). "Received" was defined as "the purchaser or its agent first either taking physical possession of the goods or having dominion and control over them." Former Rule 193(2)(d). "Agent" was defined as "a person authorized to receive goods with the power to inspect and accept or reject them." Former Rule 193(2)(e).

Former Rule 193 did not specifically address sourcing for wholesalers in drop shipments. One example discussed a drop shipment scenario, but did not address sourcing with respect to the wholesale seller. Former Rule 193(11)(h).

2.    Current Version

In 2014, DOR filed a preproposal statement of inquiry about proposed rulemaking for Rule 193. DOR stated that it was seeking to amend Rule 193 to "reflect current law," including "providing clearer and more detailed guidance regarding the tax consequences associated with drop shipment sales." Admin. Rec. (AR) at 394. In response to a stakeholder inquiry, DOR stated that it felt former Rule 193's guidance on drop shipments was "misleading" and wanted to "provide more robust guidance." AR at 525.

DOR held a public hearing in March 2015. At the hearing, DOR stated that it wanted to provide "clear and more detailed guidance regarding the tax consequences associated with drop shipment sales." Clerk's Papers (CP) at 310. Several commenters raised concerns about Rule 193's definition of "receipt" as not conforming with the statute.

In its "Concise Explanatory Statement" accompanying the rule, DOR responded to comments as "adding language to the drop shipment section to clarify that the place of receipt of goods in a drop shipment transaction is where the property is delivered." CP at 275. DOR's reason for changing the definition of receipt was to "incorporat[e] the current statutory definition of 'receipt.'" CP at 271.

In July 2015, DOR adopted the new version of Rule 193. Rule 193(301) describes drop shipment sales as involving two separate sales: a sale from the seller to the customer and a sale from the wholesaler to the seller. Subsection (301) then states, "The place of receipt in a drop shipment transaction is where the property is delivered (*i.e.*, the seller's customer's location)."

Rule 193(304) states in part, "Where the wholesaler has nexus with Washington but the seller does not have nexus with Washington, wholesaling B&O tax applies to the sale of tangible personal property by the wholesaler to the seller for shipment to the seller's customer."

Example 12 under subsection (304) states as follows:

> Seller is located in Ohio and does not have nexus with Washington. Seller receives an order from Customer, located in Washington, for parts that are to be shipped to Customer in Washington for its own use as a consumer. Seller buys the parts from Wholesaler, which has nexus with Washington, and requests that the parts be shipped directly to Customer. Seller is not subject to B&O tax and is not required to collect retail sales tax on its sale to Customer because Seller does not have nexus with Washington. *The sale by Wholesaler to Seller is subject to wholesaling B&O tax because Wholesaler has nexus with Washington and Customer receives the parts (i.e., the parts are delivered to Customer) in Washington.*

(Emphasis added.)

Rule 193(305) states in part, "Where the seller and the wholesaler have nexus with Washington, wholesaling B&O tax applies to the wholesaler's sale of tangible personal property to the seller."

Rule 193(202)(a) defines "receive" and "receipt" as "the purchaser first either taking physical possession of, or having dominion and control over, tangible personal property."

Rule 193(203)(b)(i) defines a "purchaser" as including "the purchaser's agent or designee."

D.      STATUTORY AUTHORITY FOR RULE 193

Synnex argues that Rule 193 is invalid because it exceeds DOR's statutory authority in that it conflicts with RCW 82.32.730(1). Synnex challenges three provisions of Rule 193: (1) Rule 193(301), which states that "[t]he place of receipt in a drop shipment transaction is where the property is delivered (*i.e.*, the seller's customer's location"); (2) Rule 193(304), which requires the wholesale seller to pay B&O tax on the sale to a wholesale purchaser who does not have a nexus with Washington when the goods are shipped to Washington; and (3) Rule 193(305), which requires the wholesale seller to pay B&O tax on the sale to a wholesale purchaser who has a nexus with Washington.

We hold that DOR did not exceed its statutory authority in enacting Rule 193(301), (304), and (305).

1.    Interpretation of "Purchaser" in RCW 82.32.730(1)(b)

Assessing the validity of the challenged Rule 193 provisions depends on the interpretation of RCW 82.32.730(1)(b), which states,

> (b) When the tangible personal property . . . is not received by the purchaser at a business location of the seller, the sale is sourced to the location where receipt by the purchaser or the purchaser's donee, designated as such by the purchaser, occurs,

11

including the location indicated by instructions for delivery to the purchaser or donee, known to the seller.

RCW 82.32.730(1)(c) provides the sourcing rule if (a) and (b) do not apply.[1]

Drop shipments involve two distinct sales as described in Rule 193(301). RCW 82.32.730(1)(b) applies separately to each sale.

The first sale is a retail sale and involves the customer – the retail purchaser – and the retail seller. The retail purchaser does not receive the product at the retail seller's business location, so under (1)(b) the sale is sourced to the location where receipt by the retail purchaser occurs. For the *retail sale*, the retail purchaser actually receives the product. Therefore, if the customer's location is in Washington and the retail seller has a sufficient nexus with Washington, the retail seller is subject to B&O taxes on that transaction.

The second sale is a wholesale sale and involves the wholesale purchaser – also the retail seller – and the wholesale seller. Once this sale occurs, the wholesale purchaser directs the wholesale seller to deliver the product to the wholesale purchaser's customer. There is no question that the "purchaser" does not receive the product at the wholesale seller's business location, so RCW 82.32.730(1)(b) sources this sale to the location where receipt by the "purchaser" occurs. The parties differ as to the meaning of "purchaser" in RCW 82.32.730(1)(b).

Synnex argues that "purchaser" is limited to the wholesale purchaser. Under this interpretation, the wholesale purchaser never receives the product, which is delivered directly to the customer. Therefore, Synnex asserts that under the plain language of RCW 82.32.730(1)(b), that subsection cannot apply to the *wholesale sale* portion of the drop shipment

---

[1] The parties agree that RCW 82.32.730(1)(a) does not apply here.

transaction.Because RCW 82.32.730(1)(b) does not apply, RCW 82.32.730(1)(c) applies to the wholesale sale portion of the drop shipment transaction. Under that section, the sale is sourced to the purchaser's address – which again Synnex argues refers to the wholesale purchaser. If that address is outside of Washington, the wholesale seller is not subject to B&O taxes on that transaction.

DOR argues that "purchaser" includes the wholesale purchaser's customer who receives delivery of the product. Only that customer "receives" – takes physical possession of – the product. DOR refers to the language of RCW 82.32.730(1)(b), which states that the location where receipt by the purchaser occurs includes "the location indicated by instructions for delivery to the purchaser." For a drop shipment, the only delivery is to the wholesale purchaser's customer. DOR asserts that if the legislature did not intend that customer to be treated as a "purchaser," it would not have included the option to use delivery instructions.

In summary, application of RCW 82.32.730(1)(b) depends on the interpretation of the term "purchaser." If the term includes only the wholesale purchaser – the entity purchasing the product from the wholesaler – RCW 82.32.730(1)(b) does not apply because the wholesale purchaser never receives the product. Therefore, RCW 82.32.730(1)(c) applies and the sale is sourced to the wholesale purchaser's location. If "purchaser" is defined more broadly to include the wholesale purchaser's customer in a drop shipment transaction, RCW 82.32.730(1)(b) applies because that customer actually receives the product and the sale is sourced to the customer's location.

As noted above, RCW 82.32.730 does not define "purchaser." Therefore, the term must be given its plain and ordinary meaning and interpreted in the context of the statute. *Ekelmann*, 22 Wn. App. 2d at 807.

The dictionary definition of "purchaser" is "one that purchases." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1845 (2002). To purchase means "to obtain (as merchandise) by paying money or its equivalent: buy for a price." *Id.* at 1844. This definition is not particularly helpful because both the wholesale purchaser's customer and the wholesale purchaser are "purchasers" of the same product.

Synnex's analysis is reasonable in light of the fact that a drop shipment transaction involves two separate sales. Here, the issue is how to source the wholesale sale. The wholesale purchaser's customer clearly is not purchasing anything in the wholesale sale, which is solely between the wholesale seller and the wholesale purchaser. Rather than being a purchaser, the customer is simply the beneficiary of that sale.

On the other hand, DOR's analysis is consistent with the common sense realities of the drop shipment transaction. Looking at the transaction as a whole, the wholesale purchaser's customer is the actual purchaser of the product. The customer orders and pays for the product and the product is delivered to the customer, so the result of the transaction is that the customer receives the product they purchased. The fact that the retail seller must procure the product through another wholesale sale does not mean that the customer is not the ultimate purchaser of the product.

Both Synnex's interpretation and DOR's interpretation make sense. We conclude that both interpretations of the term are reasonable, and therefore the meaning of "purchaser" in RCW 82.32.730(1)(b) is ambiguous. *See Madsen*, 33 Wn. App. 2d at 381.

2. Rule 193(301), (304), (305) – Place of Receipt

Synnex argues that DOR exceeded its statutory authority in issuing Rule 193(301), (304), and (305). We disagree.

14

DOR implemented its interpretation of "purchaser" in RCW 82.32.730(1)(b) by issuing Rule 193(301), which states that "[t]he place of receipt in a drop shipment transaction is where the property is delivered (*i.e.*, the seller's customer's location." Rule 193(304) and (305) implement section (301) under specific scenarios. The question is whether these rules are reasonably consistent with RCW 82.32.730(1)(b). *See Ctr. for Biological Diversity*, 14 Wn. App. 2d at 967.

We are guided by the principle that "[a]n agency charged with the administration and enforcement of a statute may interpret ambiguities within the statutory language through the rule making process." *Edelman*, 152 Wn.2d at 590. This is consistent with the Supreme Court's statement that if a tax statute is ambiguous, a court should give "great weight" to DOR's interpretations that are within the agency's "special expertise." *First Student*, 194 Wn.2d at 717. Here, we conclude above that the term "purchaser" in RCW 82.32.730(1)(b) is ambiguous. Interpretation of statutes affecting B&O taxes are within DOR's special expertise. Therefore, we defer to DOR's interpretation.

We also are guided by the canon of construction that where two interpretations of statutory language are equally reasonable, the court should adopt " 'the interpretation which better advances the overall legislative purpose.' " *Wright*, 189 Wn.2d at 729 (quoting *Weyerhaeuser*, 86 Wn.2d at 321). It is settled that " 'the legislature intended to impose the business and occupation tax upon virtually all business activities carried on within the state.' " *Avnet*, 187 Wn.2d at 50-51 (quoting *Time Oil*, 79 Wn.2d at 146). DOR's interpretation is consistent with this legislative intent.

Finally, DOR's interpretation is consistent with the Supreme Court's statements regarding the purchaser in drop shipment transactions in *Avnet*, 187 Wn.2d 44. In *Avnet*, the

court interpreted former Rule 193, which provided that B&O taxes were imposed on goods "received by the purchaser" in Washington. *Id.* at 52 (citing former Rule 193(7)). The term "received" was defined to include both the purchaser *or its agent*. *Id.* at 53 (citing former Rule 193(2)(d)). The court reasoned that if the wholesale purchaser was the purchaser under the rule, the customer was an "agent" of the wholesale purchaser. *Id.* at 62. However, the court also stated that the customer also could be considered the "purchaser" under former Rule 193(7): "A commonsense breakdown of a drop-shipped sale demonstrates that the 'purchaser' is the ultimate recipient in Washington." *Id.*

The court noted that the drop ship transaction does not start with the wholesale purchase placing an order with the wholesale seller. *Id.* at 62-63. Instead, the wholesale purchaser is placing an order "only because it first received an order from its customer in Washington." *Id.* at 63. After giving an example of a drop shipment transaction, the court stated, "The result is that the ultimate recipient in Washington is, for all intents and purposes, the purchaser of [the wholesale seller's] goods." *Id.*

> In a concurring opinion, Justice González elaborated on this conclusion:
>
> The goods at issue in Avnet's drop-shipped sales were received by the purchaser in our state because the entity ultimately taking possession of those goods was a Washington purchaser, regardless of the fact that there was a facilitator elsewhere. Construing "purchaser" to encompass the ultimate Washington purchaser follows our precedent and follows the legislature's clear intent to impose B & O tax on virtually all business in our state.

*Id.* at 68 (González, J., concurring).

Although *Avnet* addressed the language of former Rule 193 and not RCW 82.32.730(1)(b), former Rule 193(7) and RCW 82.32.730(1)(b) contain identical language: "received by the purchaser." The statements in *Avnet* support DOR's interpretation of the statute.

Under DOR's analysis, the statement in Rule 193(301) that "[t]he place of receipt in a drop shipment transaction is where the property is delivered (*i.e.*, the seller's customer's location" is reasonably consistent with the language of RCW 82.32.730(1). Rule 193(304) and (305) implement the rule stated in (301). Therefore, we hold that Rule 193(301), (304) and (305) are not invalid.

3.   Rule 193(202)(a) – Definition of "Receive" or "Receipt"

In its reply brief, Synnex argues that DOR exceeded its statutory authority in issuing Rule 193(202)(a), which defines "receive" and "receipt" to mean "the purchaser first either taking physical possession of, or having dominion and control over, tangible personal property." However, in its opening brief Synnex makes no argument regarding Rule 193(202) and references Rule 193(202) only once, in a footnote.[2] We generally do not consider arguments raised for the first time in a reply brief. *State v. Eyman*, 24 Wn. App. 2d 795, 814, 521 P.3d 265 (2022), *review denied*, 1 Wn.3d 1021 (2023). Therefore, we do address the validity of Rule 193(202)(a).

4.   Rule 193(203)(b)(i) – Definition of "Purchaser"

DOR also implemented its interpretation of "purchaser" in RCW 82.32.730(1)(b) by issuing Rule 193(203)(b)(i), which states that "[t]he term 'purchaser' includes the purchaser's agent or designee." Synnex briefly mentions the language of this rule in its reply brief and suggests this it is inconsistent with RCW 82.32.730(1)(b). But in neither its opening brief nor its reply brief does Synnex list Rule 193(203)(b)(i) as one of the rules it is challenging or state that Rule 193(203)(b)(i) should be declared invalid. For example, in its reply brief Synnex states,

---

[2] Further, Synnex's declaratory judgment complaint did not challenge Rule 193(202)(a) – the request for relief refers only to Rule 193(301), (304), and (305).

"The amended provisions of Rule 193 that conflict with the controlling authority – Rule 193(202)(a), (301) and (305) – must be invalidated." Reply Br. at 2.

We generally decline to consider an issue when the appellant has failed to provide any meaningful argument regarding that issue. *Wiklem v. City of Camas*, 31 Wn. App. 2d 575, 593, 551 P.3d 1067 (2024), *review denied*, 4 Wn.3d 1002 (2025). Therefore, we do not address the validity of Rule 193(203)(b)(i).

E.     ARBITRARY AND CAPRICIOUS CLAIM

Synnex argues that DOR acted arbitrarily and capriciously in enacting Rule 193. We disagree.

1.     Legal Principles

We will consider an agency action to be arbitrary and capricious only if the action is " 'willful and unreasoning and taken without regard to the attending facts or circumstances.' " *Whidbey Env't Action Network v. Growth Mgmt. Hr'gs Bd.*, 14 Wn. App. 2d 514, 526, 471 P.3d 960 (2020) (quoting *Att'y Gen.'s Off. v. Utils. & Transp. Comm'n*, 128 Wn. App. 818, 824, 116 P.3d 1064 (2005)). If there is room for two opinions and the agency duly considered its action, the action is not arbitrary and capricious. *Whidbey Env't Action Network*, 14 Wn. App. 2d at 526. The existence of contrary evidence also does not render an agency decision arbitrary and capricious. *Id.* And even if we believe the action was erroneous, we will affirm the action if taken with due consideration. *Id.* "The scope of review under an arbitrary and capricious standard is very narrow, and the party asserting it carries a 'heavy burden.' " *Ass'n of Wash. Spirits & Wine Distribs. v. Liquor Control Bd.*, 182 Wn.2d 342, 359, 340 P.3d 849 (2015) (quoting *King County Pub. Hosp. Dist. No. 2 v. Dep't of Health*, 167 Wn. App. 740, 749, 275 P.3d 1141 (2012)).

We will base our review of whether an agency rule is arbitrary and capricious on the rule-making file and the agency's explanations for the rule. *Wash. Rest. Ass'n v. Liquor & Cannabis Bd.*, 10 Wn. App. 2d 319, 341, 448 P.3d 140 (2019).

2.    Analysis

Here, DOR explained its reasons for adopting Rule 193 after considering input from external stakeholders. DOR believed that its prior rules regarding drop shipments were "misleading" and sought to "provide more robust guidance." AR at 525. DOR also stated that it sought to comport its sourcing rules with law and clarify its examples of drop shipments. In addition, the agency sought to "reflect current law," which it had an obligation to follow. AR at 394. And in its Concise Explanatory Statement, DOR specifically stated that its drop shipment rule was to incorporate the current statute. This reflects a reasoned explanation for enacting Rule 193.

Synnex argues that DOR failed to provide a rational explanation for the amendments because DOR did not provide a reason for why it implemented Rule 193 without a statutory basis for doing so.

Synnex's argument appears to state that the APA required DOR to explain why it enacted an amendment contrary to statute. But as held above, DOR did not enact a rule contrary to statutory authority. Nor did DOR depart from existing agency practice. Accordingly, DOR was only required to consider " 'attending facts or circumstances,' " not explain a nonexistent difference between Rule 193 and the statute. *Whidbey Env't Action Network*, 14 Wn. App. 2d at 526 (quoting *Att'y Gen.'s Off.*, 128 Wn. App. at 824).

Accordingly, we hold that DOR was not arbitrary and capricious in enacting Rule 193.

CONCLUSION

We affirm the superior court's denial of Synnex's petition for declaratory relief.

_____
MAXA, J.

We concur:

_____
CRUSER, C.J.

_____
VELJACIC, J.